IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

John Doe, et al.,            )
                             )
            Plaintiffs,      ) Case No. 1:05-CV-125
                             )
    vs.                      )
                             )
Jim Petro, et al.,           )
                             )
            Defendants.      )

O R D E R

This matter came before the Court on April 29, 2005 for a hearing on Plaintiffs' motion for a temporary restraining order.[1]  At the conclusion of the hearing, the Court denied Plaintiffs' motion in an oral ruling from the bench.  This written order reiterates and in some places supplements the Court's oral ruling.

Plaintiffs in this case are registered sex offenders who challenge the constitutionality of Ohio Rev. Code § 2950.031 on several grounds.  Section 2950.031 forbids registered sex offenders from living within 1,000 feet of a school premises.  This section also provides a resident living within 1,000 of the school premises the right to file an action for relief against registered a sex offender who violates this provision.  As of

---

[1] Plaintiffs' motion was originally Doc. No. 9 in Doe v. Petro, Case No. 1:05-CV-250.  On April 25, 2005, the Court entered an order by marginal notation granting Defendants' motion to consolidate the two cases.

April 29, 2005, county prosecutors, city solicitors, law directors, and other municipal legal officers have the right to file actions for relief pursuant to § 2950.31.

The trial court is required to assess four factors in deciding whether to grant a motion for a temporary restraining order: 1) the plaintiff's likelihood of success on the merits; 2) whether plaintiff will be irreparably harmed in the absence of an injunction; 3) the harm to others if an injunction is granted; and 4) the public's interest in granting an injunction. McPherson v. Michigan High Sch. Athletic Ass'n, Inc., 119 F.3d 453, 459 (6th Cir. 1997). These factors are not prerequisites to issuing an injunction but factors to be balanced. See Unsecured Creditors' Comm. of DeLorean Motor Co. v. DeLorean, 755 F.2d 1223, 1229 (6th Cir. 1985). The Court should not issue a preliminary injunction where there is no likelihood of success on the merits. Michigan State AFL-CIO v. Miller, 103 F.3d 1240, 1249 (6th Cir. 1997).

A. Likelihood of Success on the Merits

Plaintiffs assert that § 2950.031 is unconstitutional on the following grounds 1) it infringes on the right of intrastate travel; 2) it violates their Fifth Amendment right against self-incrimination; 3) it violates their right to due process because there has been no individualized determination that they pose safety risks to children; 4)it violates the Ex Post Facto Clause; 5) it impairs their obligations under their

2

contracts with landlords; and 6) it intrudes on the privacy rights related to making family decisions. The Court does not believe that Plaintiffs are likely to succeed on overturning § 2950.031 on any of these grounds.

The Court's research has not developed any authority which establishes a general or unrestricted right to intrastate travel which concerns place of residence. In <u>Johnson v. City of Cincinnati</u>, 310 F.3d 484, 495 (6th Cir. 2003), the Court recognized a limited constitutional right to travel locally through public spaces and roadways. In contrast to the ordinance at issue in <u>Johnson</u>, § 2950.031 does not forbid persons who are subject to its restrictions from entering into or traveling through the exclusionary zone. Section § 2950.031 only prohibits sex offenders from establishing a permanent residence within the exclusionary zone. The Court in <u>Johnson</u> did not establish a constitutional right of intrastate travel concerning place of residence. Even assuming there is a right of intrastate travel, convicted felons are properly subjected to many restrictions on their constitutional rights which would be objectionable if imposed on non-felons. <u>See</u>, e.g., <u>Jones v. Helms</u>, 452 U.S. 412, 420-22 (1981). Thus, it appears that § 2950.031 does not infringe on any fundamental right of intrastate travel.

Section § 2950.031 likely does not infringe upon the Fifth Amendment right against self-incrimination. Section 2950.031 does not impose any criminal penalties if a sex offender registers an address within an exclusion zone or establishes a

3

residence within an exclusion zone. Rather, a sex offender who violates § 2950.031 is only subject to a civil suit for injunctive relief. The only criminal penalties are for failure to register as a sex offender as required by Chapter 2950. See Ohio Rev. Code § 2950.99. Therefore, § 2950.031 does not implicate the Fifth Amendment right against self-incrimination.

Plaintiffs are not entitled to an individualized determination that they pose a threat to the safety of children prior to being subjected to the restrictions of § 2950.031. Connecticut Dept. of Public Safety v. Doe, 538 U.S. 1, 7-8 (2003). As the Court explained in Doe, and reiterated by the Eighth Circuit in Doe v. Miller, __F.3d___, No. 04-1568, 2005 WL 991635, at *5 (8th Cir. Apr. 29, 2005), Plaintiffs are not entitled to a due process hearing to establish a fact not relevant to the statutory scheme. Although § 2950.031 certainly was enacted as a measure to protect children from sex offenders, the requirements of § 2950.031 are not triggered by a determination that the individual actually poses a threat to children. The fact of conviction of a sex offense that is not registration-exempt is all that is required to be subject to § 2950.031. As the Eighth Circuit explained in Miller, § 2950.031 represents a classification between sex offenders and other individuals which the legislature is entitled to create and which does implicate procedural due process concerns. Miller, 2005 WL 991635, at *5.

Section 2950.031 likely does not violate the Ex Post Facto Clause because it is not punitive in nature.  Smith v. Doe, 538 U.S. 84, 97-105 (2003); Cutshall v. Sundquist, 193 F.3d 466, 476-77 (6th Cir. 1999).

Section 2950.031 likely does not impair Plaintiffs' obligations under their contracts with landlords.  The constitutional provision prohibiting states from passing legislation impairing the obligations of contracts is not an absolute.  To establish impairment of contracts, the plaintiff must first establish that the challenged legislation would in fact operate as a substantial impairment of a contractual relationship.  Toledo Area AFL-CIO Council v. Pizza, 154 F.3d 307, 323 (6th Cir. 1998).  If the plaintiff satisfies that element, the burden shifts to the state to offer a significant and legitimate public purpose for the regulation.  Id.  If the state carries this burden, the court must assess whether the adjustment of rights is based upon reasonable conditions and is of a character appropriate to the public purpose justifying the legislation's adoption.  Id.  Where the contract which is impaired is between private parties, the court will normally defer to the state's judgment as to the necessity and reasonableness of the measure.  Id.

In this case, the Court assumes for purposes of the present motion that a successful suit under § 2950.031 would result in the complete abrogation of a lease between a landlord and a registered sex offender.  Nevertheless, the state of Ohio

has a significant and legitimate purpose for impairing the parties' contractual rights - the protection and safety of children.  Because a landlord/tenant contract would be between private parties, the Court should defer to the legislature's conclusion that this is a necessary and reasonable impairment to impose on the parties' contractual rights.  Therefore, § 2950.301 likely does not unconstitutionally impair Plaintiffs' obligations under contracts.

Finally, § 2950.031 likely does not impair any of Plaintiffs' constitutional privacy interests regarding family members.  Typically, the constitutionally-recognized family privacy interests concern contraception, abortion, child rearing, education, and religion.  Section § 2950.031 does not implicate or infringe upon any of these interests.  Section § 2950.031 does not prevent persons subject to its restrictions from living with their families, it only regulates the location where they may live.  Plaintiffs are free to live with their families in non-restricted areas.  Section § 2950.031 should be contrasted with the ordinance at issue in Moore v. City of East Cleveland, 431 U.S. 494 (1977),  in which the law defined "family" so restrictively that it was impossible for all but a few narrow categories of families to live together. The Court in Doe v. Staples, 717 F.2d 953 (6th Cir. 1983), called the ordinance in Moore "an assault by the State of Ohio on family integrity." Id. at 954.  In comparison, § 2950.031 is not a direct regulation of families or family life.  See Doe, 2005 WL 991635, at *6.

Therefore, § 2950.031 likely does not infringe Plaintiffs' constitutional rights concerning family matters.

In summary, the Court finds that Plaintiffs are unlikely to succeed on the merits of their constitutional claims.

### B. Irreparable Harm

The Court is not convinced that Plaintiffs are at risk of any immediate irreparable harm. Plaintiffs' concern is that enforcement of § 2950.031 will result in their eviction from their current residences which will then be followed by homelessness. Even if Plaintiffs have received notices that they may be sued under § 2950.03, they have not established any current likelihood that such suits will be filed. Furthermore, even if a county prosecutor files a suit for injunctive relief under § 2950.031, Plaintiffs have not established any likelihood that such a suit will result in their eviction from their current residences. Even if such lawsuit does result in eviction, Plaintiffs have not established any likelihood that they will be unable to find other suitable residences outside the exclusion zones. Finally, it seems unlikely that a state court judge would not give a sex offender subject to eviction some reasonable time to locate another suitable residence. Therefore, any contention that enforcement of § 2950.031 by county prosecutors or other municipal legal officers will result in immediate homelessness for the Plaintiffs is purely speculation. Thus, Plaintiffs have failed to establish irreparable harm if § 2950.031 is not enjoined.

### C. Harm to Others & the Public Interest

In this case, these two factors are intertwined. Contrary to Plaintiffs' assertion, the Court finds that the harm to others would be substantial if it enjoined the enforcement of § 2950.031. Additionally, the public interest is substantially in favor of § 2950.031 being enforced.

Section 2950.031 was enacted to protect children, who are among the most vulnerable members of our society and who are least able to protect themselves. Plaintiffs argue that the risk to others is low because recidivism rates among sex offenders in general are low and because sex offenders who have committed crimes against adults are unlikely to re-offend against children. This argument, however, overlooks the fact that this law is enacted for the purpose of protecting the victims of recidivist sex offenders. See Ohio Rev. Code § 2950.02. Thus, by enjoining the statute, the Court would be exposing the beneficiaries of the statute to the very harm it was designed to protect against. Additionally, while Plaintiffs appear to believe that the General Assembly has been too utilitarian in its approach to sex offenders, they actually miss the utilitarian aspect of their own argument, i.e., that a low recidivism rate justifies exposing the victims of recidivism to injury in order not to burden the larger number of sex offenders who will not re-offend. In the Court's judgment, the legislature is entitled to conclude that protecting or trying to protect a small number of victims justifies imposing

burdens on the larger number of individuals who will not re-offend.

Plaintiffs also argue that the risk of harm to others if enforcement of § 2950.031 is enjoined is low because the law does not actually protect children. In support, Plaintiffs note a few recent well-publicized cases from Florida in which recidivist sex offenders abducted and murdered children, pointing out that the alleged offenders in those cases did not live within 1,000 feet of schools. Obviously, no law protects every person in every situation, just as no law ever stops a criminal who is determined to commit a crime. That does not mean, however, that the legislature should not or cannot do it what it can to reduce the risk of harm that recidivists actually present. The fact that similar laws did not prevent certain crimes from being committed does not mean that the laws were not worth enacting. The focus should not be on whether the law failed its purpose in one particular case, but rather it should be on the crimes the law did help to prevent. We may never know the answer to that question, to the Court, however, the potential cost of discovering the answer by enjoining § 2950.031 is a risk too great to countenance. Accordingly, the Court concludes that risk of harm to others by issuing injunctive relief is high.

Finally, the public interest weighs heavily against granting temporary injunctive relief. The public has a substantial and compelling interest in protecting children from sex offenders. Although the Court recognizes that the public

9

also has an interest in seeing that unconstitutional laws are not enforced, as explained above, § 2950.031 likely is not unconstitutional. During the hearing, Plaintiffs questioned whether the public interest would be served by having the streets flooded with homeless sex offenders. Plaintiffs also posit that § 2950.031 may result in more stress-related recidivism and that the public would be better served by not putting sex offenders into stressful situations about their residences. Whether these will be the end results of the enactment of § 2950.031 is purely speculative. Nevertheless, Plaintiffs' arguments in this regard represent policy considerations which are best-addressed to the legislature and which the legislature is best-equipped to resolve. It is sufficient for the Court for present purposes that the public has a compelling interest in protecting children from sex offenders and that § 2950.031 furthers that goal by prohibiting sex offenders from establishing permanent residences in areas where children are sure to be concentrated. Thus, the public interest favors denying the motion for a temporary restraining order.

## Conclusion

Each of the factors the Court must consider in deciding whether to grant injunctive relief weigh against the Plaintiffs. Plaintiffs are not likely to succeed on the merits. Plaintiffs have not established any substantial likelihood of irreparable harm. The risk of harm to others is great if the Court does grant injunctive relief. The public interest does not favor

10

granting injunctive relief. Accordingly, Plaintiffs' motion for a temporary restraining order is not well-taken and is **DENIED.**

        **IT IS SO ORDERED**

Date  May 3, 2005                      s/Sandra S. Beckwith  
                                            Sandra S. Beckwith, Chief Judge  
                                              United States District Court