**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

Daryl Coston, <u>et al.</u>,          )
                                      )
              Plaintiffs,       ) Case No. 1:05-CV-125
                                      )
      vs.                             )
                                      )
Jim Petro, <u>et al.</u>,             )
                                      )
              Defendants.       )

<u>FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER</u>

Plaintiffs in this case allege that they are registered sex offenders in the State of Ohio. Plaintiffs' consolidated class action complaint challenges the constitutionality of Ohio Rev. Code § 2950.031 on a variety of grounds. Section 2950.031 forbids registered sex offenders from establishing a residence or occupying a residential premises that is located within 1,000 feet of a school premises. If a sex offender violates § 2950.031, an owner or lessee of real property located within 1,000 feet of that school premises, or any municipal legal officer having jurisdiction over the residence in question, such as a prosecuting attorney or a city law director, may file an action for injunctive relief against the sex offender. Specifically, the complaint alleges that § 2905.031 is

1

unconstitutional on the grounds that it: infringes on the fundamental right of privacy in family matters (Count I); violates the fundamental right of intrastate travel (Count II); violates the Due Process Clause by failing to provide a process for individualized determination of dangerousness (Count III); violates the Due Process Clause by failing to give adequate notice of where sex offenders can live (Count IV); violates the constitutional right against impairment of contracts (Count V); violates the Fifth Amendment privilege against self-incrimination (Count VI); violates the Ex Post Facto Clause by imposing retroactive punishment (Count VII); and, violates the Takings Clause of the Fifth Amendment (Count VIII).

On May 4, 2005, the Court entered an order (Doc. No. 45) denying Plaintiffs' motion to temporarily enjoin Defendants from enforcing § 2950.031. The matter was then set before the Court on September 6-7, 2005 for an evidentiary hearing on Plaintiffs' motion to permanently enjoin § 2950.031. The parties submitted proposed findings of fact and conclusions of law on October 14, 2005.

Prior to trial, Plaintiffs withdrew Count III of their complaint claiming that § 2950.031 fails to provide for an individualized determination of dangerousness. Tr. at 1-14-17. Additionally, in their post-trial brief, Plaintiffs did not submit proposed findings of facts and conclusions of law for the

claims asserted in Counts I, V, VI, and VIII of the complaint.
Accordingly, the Court concludes that Plaintiffs have abandoned
these claims.  See United States v. Local 1804-1, Int'l
Longshoremen's Ass'n, 812 F. Supp.2d 1303, 1308 n.5 (S.D.N.Y.
1993)(treating as abandoned claims for which plaintiff did not
submit proposed findings of fact and conclusions of law); Turley
v. Union Carbide Corp., 618 F. Supp. 1438, 1441 (S.D.W.V.
1985)(same).  Thus, Plaintiffs have remaining claims remaining
under Counts II, IV, and VII of the complaint.

The matter is now ready for decision by the Court.  To
the extent that the following findings of fact should more
properly be considered conclusions of law, and vice versa, they
are hereby adopted as such.

## I. FINDINGS OF FACT

1. The Plaintiffs named in the complaint are Daryl Coston, David
   Slack, Ronald LaFreniere, Richard Howard, Jose Pacheco, and
   Kenneth Borek.  See generally Consolidated Class Action
   Complaint (Doc. No. 52).

2. The Defendants in this case are the State of Ohio, Hamilton
   County Prosecutor Joseph Deters, Delaware County Prosecutor
   David Yost, and Lucas County Prosecutor Julia Bates.  Id.;
   Doc. No. 58 (order granting State of Ohio's motion to
   intervene and dismissing Defendant Jim Petro).

3. On November 20, 1974, Plaintiff Coston pleaded guilty to a
   charge of rape and was sentenced to an indeterminate term of
   imprisonment of seven to twenty-five years.  Doc. No. 80-2, at
   3.  Coston was convicted on another charge of rape
   shortly thereafter.  Tr. at 1-207-08.  Coston was paroled on
   both of these offenses in December 1981.  Id. at 1-212.
   Coston was convicted of robbery in 1982 and paroled on this
   offense in 1988.  Id. at 1-212-13.  Coston then had his
   paroled revoked on a violation and was re-incarcerated.

Coston was released from imprisonment on his parole violation in 2001. <u>Id.</u> at 1-215. Coston had his paroled revoked once again in 2003 after he was convicted of menacing by stalking. <u>Id.</u> at 1-217. Although Coston admitted that he made "unwanted advances" toward the complainant in the course of committing the offense of menacing by stalking, <u>id.</u> at 1-218, the record does not reflect whether the charge contained a sexual motivation specification pursuant to Ohio Rev. Code § 2971.01(J).

Coston currently lives in a halfway house sponsored by the <u>Volunteers of America. <u>Id.</u> at 2-7. Coston had been at the halfway house for approximately six months at the time of the hearing but he was unsure how long he would be able to stay there. <u>Id.</u> at 2-8. Coston has not been able to obtain other housing at a location which is not within 1,000 feet of a school premises. <u>Id.</u> There is no evidence in the record that Coston has been adjudicated a habitual sexual offender under Ohio law.

3. Plaintiff David Slack was convicted of gross sexual imposition in violation of Ohio Rev. Code § 2907.05(A)(4) on April 17, 2001. Doc. No. 80-2, at 9. The record does not reflect the actual sentence that Slack received although the exhibit submitted by Slack reflects that a sentence of imprisonment was imposed. <u>Id.</u> Slack, however, did not adduce any evidence that he lives within 1,000 feet of a school premises. Slack did not appear or provide testimony at trial.

4. Plaintiff LaFreniere died on July 1, 2005, mooting his claim for injunctive relief from § 2950.031. Doc. No. 86.

5. On December 2, 1981, Plaintiff Richard Howard pleaded guilty and was sentenced to an indeterminate term of seven to twenty-five years of imprisonment for rape in violation of Ohio Rev. Code § 2907.02. Doc. No. 80-2, at 6. There is no evidence in the record that Howard was still serving a term of imprisonment for this conviction on or after July 1, 1997. There is no evidence in the record that Howard has been adjudicated a habitual sexual offender under Ohio law. Additionally, there is no evidence in the record that Howard lives within 1,000 feet of a school premises. Howard did not appear or provide testimony at trial.

6. There is no evidence in the record regarding Plaintiff Jose Pacheco's prior criminal record. Additionally, there is no evidence in the record that Pacheco lives within 1,000 feet of

4

a school premises.  Pacheco did not appear or provide
testimony at trial.

7. On February 14, 2001, Plaintiff Kenneth Borek pleaded guilty
   to a charge of attempt to commit corruption of a minor in
   violation of Ohio Rev. Code §§ 2903.02 & 2907.04.  Doc. No.
   80-2, at 1.  The change of plea entry also indicates that
   Borek was subject to sexual predator classification
   proceedings.  Id.  There is no evidence in the record,
   however, whether Borek was actually adjudicated a sexual
   predator nor is there evidence that he was adjudicated a
   habitual sexual offender.  The record does not reflect the
   actual sentence Borek received from the trial judge.  There is
   no evidence in the record that Borek lives within 1,000 feet
   of a school premises. Borek did not appear or provide
   testimony at trial.

## II. CONCLUSIONS OF LAW

### A. Plaintiffs Lack Article III Standing on the Remaining Claims

The Court concludes that none of the Plaintiffs have
Article III standing to challenge the constitutionality of Ohio
Rev. Code § 2950.031 because they have failed to establish that
they are subject to its provisions.

Article III of the United States Constitution requires
that the plaintiff have standing to prosecute his or her claims.
In order to have Article III standing, the plaintiff must meet
three requirements:  1) the plaintiff must have suffered injury
in fact - an invasion of a legally protected interest which is
concrete and particularized, and actual and immediate;  2) there
must be a causal connection between the injury and the conduct
complained of - the injury must be traceable to the challenged
action of the defendant and not the result of the independent

action of some third party not before the court; and, 3) it must be likely, and not merely speculative, that the plaintiff's injury will be redressed by a favorable decision from the court. Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992). Moreover, the plaintiff must establish Article III standing at each and every stage of the proceedings with the requisite degree of proof. Id. Except for certain exceptions discussed infra, at 9, a party who is not subject to the requirements or restrictions of a legislative enactment lacks Article III standing. See FW/PBS, Inc. v. City of Dallas, 493 U.S. 215, 233-35 (1990)(holding plaintiffs lacked standing to challenge civil disability provision of sexually-oriented business licensing scheme where, in part, plaintiffs failed to show previous conviction for any of enumerated disabling crimes). Because Article III standing implicates the district court's subject matter jurisdiction, the court may raise the issue of standing sua sponte. Ku v. State of Tennessee, 322 F.3d 431, 432-33 (6th Cir. 2003).

In this case, Plaintiffs Howard, Slack, Borek and Pacheco have failed to adduce any evidence that they live within 1,000 feet of a school premises. See Findings of Fact 3, 5, 6, 7. Moreover, Plaintiff Pacheco has failed to adduce any evidence that he previously has been convicted of an offense which requires him to register as a sexual offender in Ohio. Finding

of Fact 6.  Thus, these Plaintiffs have failed to establish that they have standing to challenge § 2950.031 because they failed to provide evidence that they are subject to its restrictions.  See FW/PBS, 493 U.S. at 233-35.

Additionally, a recent decision by the Supreme Court of Ohio shows that Plaintiffs Coston and Howard are not subject to the restrictions of § 2950.031 - at least based on the evidence in this record.  In State v. Champion, 832 N.E.2d 718 (Ohio 2005), the Court held that in order to be required to register as a sex offender under Ohio Rev. Code § 2950.04(A)(1), the offender must have served a term of imprisonment for the sexually oriented offense on or after July 1, 1997.  Id. at 719-20.  In this case, the record demonstrates that Coston was convicted of two counts of rape in 1974 and released from prison on those convictions in 1981.  Finding of Fact 2.  Thereafter, although Coston was imprisoned off and on for other offenses and/or parole violations, there is no evidence that he served a term of imprisonment for a sexually oriented offense on or after July 1, 1997.  Id.  Coston would have been required to register as a sex offender regardless of the date of his conviction for a sexually oriented offense if he had been adjudicated an habitual sexual offender prior to July 1, 1997.  Ohio Rev. Code § 2950.04(A)(1)(c).  There is no evidence, however, that Coston was adjudicated a habitual sexual offender prior to July 1, 1997.

Finding of Fact 2; <u>Champion</u>, 832 N.E.2d at 720 (offender not adjudicated a habitual sexual offender under § 2950.04(a)(1)(c) not required to register).

Finally, Coston would be required to register as a sex offender under § 2950.04(a)(1)(B) if he was sentenced for a sexually oriented offense after July 1, 1997.  The record, however, does not demonstrate that Coston in fact was convicted of a sexually oriented offense after July 1, 1997.  Although Coston has a 2003 conviction for menacing by stalking, menacing by stalking is only a sexually oriented offense if committed with sexual motivation.  <u>See</u> Ohio Rev. Code § 2950.01(D)(1)(c).  Under Ohio law, "sexual motivation" is a specification that must be charged and proved by the prosecution.  <u>See</u> <u>State v. Crotts</u>, 820 N.E.2d 302, 307 (Ohio 2004).  Here, although Coston admitted that he was charged with menacing by stalking for making "unwanted advances" toward the complainant, there is no evidence in this record that he was convicted of menacing by stalking with sexual motivation.  Finding of Fact 2.  Thus, the record fails to demonstrate that Coston was convicted of a sexually oriented offense which requires registration.  <u>See</u> Ohio Rev. Code § 2950.04(A)(1)(6)("A person who has been convicted of, is convicted of, has pleaded guilty to, or pleads guilty to a sexually oriented offense that is a registration-exempt sexually oriented offense, and a person who is or has been adjudicated a

delinquent child for committing a sexually oriented offense that
is a registration-exempt sexually oriented offense, does not have
any duty to register under this section based on that conviction,
guilty plea, or adjudication.").  Consequently, Coston has not
established that he is subject to the requirements of § 2950.031.
See Ohio Rev. Code § 2950.031(A)("No person who has been
convicted of, is convicted of, has pleaded guilty to, or pleads
guilty to either a sexually oriented offense that is not a
registration-exempt sexually oriented offense or a child-victim
oriented offense shall establish a residence or occupy
residential premises within one thousand feet of any school
premises.")(emphasis added).  Whether or not Coston is currently
being required to register as a sex offender in error under state
law is not cognizable under § 1983.  See Kumar v. Marion County
Common Pleas Court, 704 F.2d 908, 909 (6th Cir. 1983)(holding
that an alleged injury sought to be redressed under § 1983 is
properly dismissed in federal court where the injury "is the
result of the unauthorized failure of certain state agents to
follow established state law").

        The conclusion that Plaintiffs lack standing is not
altered by the fact that they purport to assert a facial
challenge to the constitutionality of § 2950.031.  See Tr. 1-6,
1-9.  Except in circumstances not applicable here, a party to
whom a statute does not apply cannot prosecute a facial challenge

in order to assert the rights of third parties not before the court.  See Warth v. Seldin, 422 U.S. 490, 499 (1975)("[T]he plaintiff generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties."); Amelkin v. McClure, 205 F.3d 293, 296 (6th Cir. 2000) (stating that facial challenges are normally rejected because a person to whom the statute may be constitutionally applied may not challenge the statute on behalf of third parties).  The exceptions to this general rule are abortion regulations, Women's Medical Professional Corp. v. Voinovich, 130 F.3d 187, 193-97 (6th Cir. 1997), regulations affecting speech protected by the First Amendment, Greater Cincinnati Coalition for the Homeless v. City of Cincinnati, 56 F.3d 710, 718 (6th Cir. 1995), and statutes that impose criminal penalties.  Belle Maer Harbor v. Charter Twp. of Harrison, 170 F.3d 553, 557 (6th Cir. 1999).  Consequently, Plaintiffs cannot assert the rights of Gerry Porter, Charles Dove, and Jason Brooks, all of whom are sex offenders who may be adversely affected by § 2950.031 but nonetheless are third parties to this litigation.  Similarly, Plaintiffs lack standing to assert the rights of third parties Amanda Porter and Mary Dove, who testified about the impact of § 2950.031 would have on them and their families if the statute was enforced against their husbands.

10

Plaintiffs lack standing to challenge § 2950.031 on the grounds that it infringes on their constitutional right of intrastate travel (assuming such a right, as framed by Plaintiffs, exists). As just indicated, the evidence in the record does not demonstrate that Coston has been convicted of any offense which requires him to register a sex offender. Therefore, on this record, § 2950.031 imposes no impediment on Coston's right to travel. Additionally, as the Court's findings of fact indicate, Plaintiffs Slack, Howard, Pacheco, and Borek provided no testimony at trial. Thus, not only have they failed to establish that they live within 1,000 feet of a school premises, they have also failed to demonstrate that they have any present or imminent intention of moving to a residence within 1,000 feet of a school premises. Likewise, these Plaintiffs have failed to present any evidence that § 2950.031 has prevented them from relocating to a residence within 1,000 feet of a school premises. Consequently, Plaintiffs have failed to establish that § 2950.031 has caused an injury-in-fact with regard to their alleged right of intrastate travel and thus lack Article III standing to prosecute this claim.

Plaintiffs come closest to establishing the requisite standing with their contention that § 2950.031 imposes punishment and is therefore a criminal statute. Section 2950.031 does not, however, impose punishment and accordingly is not a criminal

11

statute. Section 2950.031 on its face imposes no criminal sanctions – it only grants a right to bring a civil action for injunctive relief against a sex offender – and the expressed intent of the sex offender registration statute is to protect the safety and general welfare of the public. <u>See</u> Ohio Rev. Code § 2950.031; Ohio Rev. Code § 2950.02(B); <u>Smith v. Doe</u>, 538 U.S. 84, 93 (2003)(intent to protect public from sex offenders historically regarded as a legitimate nonpunitive governmental objective). Because § 2950.031 is civil and non-punitive on its face, the Court must then examine whether the statute is so punitive in purpose or effect as to negate the General Assembly's intention to deem it civil. <u>Id.</u> at 92.[1] In doing so, however, the Court must keep in mind that "only the clearest proof will suffice to override legislative intent and transform what has been denominated a civil remedy into a criminal penalty." <u>Id.</u> The proofs in this case fall well short of demonstrating that § 2950.031 is a criminal statute.

As just indicated, an intent to promote safety and protect the public from sex offenders has traditionally been

_____

[1] The Court notes that <u>Smith</u> outlines the analysis for determining whether a statute violates the Ex Post Facto clause of the Constitution, which is a claim that Plaintiffs assert in this case. While the Court does not pass judgment on the Ex Post Facto issue here, <u>Smith</u> clearly applies in judging whether § 2950.031 is a criminal statute for purposes of assessing Plaintiffs' standing. Therefore, the Court's analysis of standing cannot help but foreshadow a likely Ex Post Facto analysis as well.

thought to be a nonpunitive purpose.  Id. at 93.  The codification of § 2950.031 in the criminal section of the Ohio statutes does not indicate a legislative intent to establish a criminal statute.  Like the statute at issue in Smith, Chapter 29 of the Ohio Revised Code contains other traditionally civil provisions, such as protecting victims' rights (Chapter 2930) and providing procedures for post-conviction relief (Chapter 2953).  Smith, 538 U.S. at 94-95; State v. Nichols, 463 N.E.2d 375, 377 (Ohio 1984)(post-conviction relief proceedings are civil).  Therefore, the Court remains convinced that § 2950.031 has a nonpunitive purpose.

The remaining question is whether § 2950.031 has a punitive effect.  In answering this question, the Court considers whether a statute like § 2950.031 has traditionally been regarded as punishment, whether it imposes an affirmative disability or restraint, whether it promotes the traditional aims of punishment, has a rational connection to nonpunitive purpose, or is excessive with respect to its nonpunitive purpose.  Smith, 538 U.S. at 97.  These factors, however, are neither exhaustive or dispositive.  Id.

As the Court in Smith pointed out, sex offender registration statutes are of recent origin and thus do not involve a traditional means of punishment.  See id.  Additionally, although § 2950.031 prohibits sex offenders from

13

living within the designated areas, this statute is unlike the traditional punishment of banishment because sex offenders are not expelled from the community or even prohibited from accessing these areas for employment or conducting commercial transactions. Doe v. Miller, 405 F.3d 700, 719 (8th Cir. 2005). Thus, the Court concludes that § 2950.031 does not involve a traditional means of punishment.

Section 2950.031 does impose an affirmative restraint or disability in that registered sex offenders are precluded from living within designated areas of the state. Nevertheless, § 2950.031 imposes no physical restraints on sex offenders and in fact is less restrictive than the involuntary commitment provisions for mentally ill sex offenders held to be nonpunitive in Kansas v. Hendricks, 521 U.S. 346, 363-65 (1997). As the Court has just noted, sex offenders are free to move about within the zone, but they cannot establish a permanent residence there. Therefore, the Court cannot conclude that this relatively limited restraint on sex offenders constitutes punishment.

Even if § 2950.031 has a deterrent effect, one of the traditional aims of punishment, this does not transform the statute into a punitive measure. Smith, 538 U.S. at 102.

The most important factor, according to the Court in Smith, is whether there is a rational connection between the statute and a nonpunitive purpose. Id. at 102-03. The statute,

14

however, does not have to be narrowly drawn to achieve its stated purpose.  Id.  Indeed, a statute is not punitive because it lacks a close or perfect fit with the nonpunitive goals sought to be advanced.  Id.  Section 2950.031 easily meets this criterion.  As this Court stated in its order denying Plaintiffs' motion for a temporary restraining order, "[T]he public has a compelling interest in protecting children from sex offenders and . . . § 2950.031 furthers that goal by prohibiting sex offenders from establishing permanent residences in areas where children are sure to be concentrated."  Doc. No. 45, at 10.  Plaintiffs reiterate their argument that § 2905.031 does not actually limit sex offenders' access to children and they point out that sex offenders can still live in apartment buildings full of children or near parks or other places where children congregate.  These are perhaps valid criticisms of § 2950.031 from a policy standpoint, but they do not detract from a rational conclusion that the safety of children is promoted when sex offenders are prohibited from living near schools.  For instance, the legislature might reasonably have concluded that safety is furthered by denying sex offenders of convenient safe havens near schools.  It is immaterial for purposes of the rational connection assessment that § 2905.031 fails to protect children in apartments and parks.  The Court does not sit to judge whether the legislature has made the best possible choice in attempting

15

to protect children from sex offenders.  Smith, 538 U.S. at 105.
Moreover, the legislature is entitled to address problems it
identifies in incremental fashion.  Williamson v. Lee Optical of
Okla., 348 U.S. 483, 489 (1955).  Perhaps the issue of sex
offenders frequenting public parks is next on its agenda, but the
legislature's failure to address every conceivable situation
where sex offenders may prey on children does not mean that §
2950.031 lacks a rational connection to the legislature's
objective.

        Plaintiffs also complain that § 2950.031 is excessive
because it treats all sex offenders the same regardless of
whether their offenses were committed against children or adults
and because it lacks a grandfather clause.  These arguments are
not persuasive.  Regarding the former argument, the legislature
is entitled to make categorical judgments that conviction of
specified crimes carries specific consequences without any
corresponding risk assessment.  Smith, 538 U.S. at 103-04.  With
respect to the latter argument, Plaintiffs overlook that the sex
offender regulatory scheme contains not one, but two grandfather
clauses.  As Plaintiffs do recognize, § 2950.031 does not apply
to rental agreements that were entered into before the date the
statute was enacted.  See Ohio Rev. Code § 2950.031 (uncodified
law).  The other, more subtle grandfather clause is contained in
the registration requirements of § 2950.04 which, as the Court

16

explained above, exempt sex offenders from registering if they were released from imprisonment for their sexually oriented offense prior to July 1, 1997.  Thus, Plaintiffs' excessiveness arguments simply fail.

In sum, the Court concludes that § 2950.031 does not have a punitive purpose or effect and, therefore, cannot be characterized as a criminal statute.  Thus, Plaintiffs lack standing to challenge § 2950.031 as a criminal statute.

A final claim where Plaintiffs potentially have standing is their contention that § 2950.031 fails to give them adequate notice of where they may live.  The argument here is that a charter school may suddenly be constructed near Plaintiffs after they have already established residence in an area in compliance with § 2950.031 and then be compelled to move for being in violation of the statute.  The Court concludes, however, that Plaintiffs do not have standing to assert this argument.  In order to have standing, Plaintiffs' alleged injury  must be "concrete and actual or imminent, not conjectural or hypothetical."  Vermont Agency of Natural Resources v. United States ex rel. Stevens, 529 U.S. 765, 771 (2000)(internal quotation marks omitted).  In this case, Plaintiffs did not present any evidence that a charter school appeared without notice near their residences, causing them to unwittingly violate § 2950.031.  While Plaintiffs did present evidence that charter

17

schools are established by lottery and on very short notice, they failed to present any proof that they face any imminent threat of displacement as a result of construction of new schools near their residences.  Therefore, the Court concludes that Plaintiffs have not demonstrated any actual or imminent injury posed by the threat of charter school construction and thus lack standing to prosecute this claim as well.  See National Rifle Ass'n of Am. v. McGaw, 132 F.3 272, 293 (6th Cir. 1997)("The mere existence of a statute, which may or may not ever be applied to plaintiffs, is not sufficient to create a case or controversy within the meaning of Article III.").

        In conclusion, for the reasons stated, Plaintiffs have failed to establish that they have Article III standing to challenge the constitutionality of Ohio Rev. Code § 2950.031 because they have failed to prove that the statute applies to them.  The Court, therefore, lacks subject matter jurisdiction over the remaining claims.  Given the Court's conclusion that Plaintiffs lack Article III standing, it need not address whether abstention pursuant to Younger v. Harris, 401 U.S. 37 (1971), is appropriate.  Accordingly, Plaintiffs' motion for a preliminary and permanent injunction is not well-taken and is **DENIED.** Plaintiffs' complaint is **DISMISSED.**

### B. Class Certification

        Plaintiffs originally filed this case as a class action

18

and moved to certify both a class of plaintiffs and a class of defendants.  See Doc. No. 20.  The Court deferred ruling on the motion for class certification in the interests of efficiency because Plaintiffs had failed to establish any likelihood that they would succeed on the merits.  Doc. No. 60.  Plaintiffs now move to withdraw their motion for class certification.  Doc. No. 93.  Defendants do not necessarily object to dismissal of the class action aspect of the case but argue that a recent decision by the Sixth Circuit requires that notice of dismissal of the class action be given to the putative class members.

In light of the Court's decision that Plaintiffs lack standing to challenge the constitutionality of § 2950.031, it necessarily follows that Plaintiffs are not appropriate class representatives because they have no injury in common with the class they seek to represent.  Thus, class certification would be inappropriate on that ground alone.  East Texas Motor Freight Sys., Inc. v. Rodriguez, 431 U.S. 395, 403 (1977)("[A] class representative must be part of the class and possess the same interest and suffer the same injury as the class members.") (internal quotation marks omitted).  Accordingly, Plaintiffs' motion for class certification is not well-taken and is **DENIED**; Plaintiffs' motion to withdraw their motion for class certification is **MOOT**.

19

In a recent decision, <u>Doe v. Lexington-Fayette Urban</u> <u>County Gov't</u>, 407 F.3d 755 (6th Cir. 2005), the Court held that district courts must assess whether putative class members are likely to be prejudiced by the dismissal of a class action lawsuit. <u>Id.</u> at 764. If so, the trial court must order that Rule 23(c) notice of the dismissal be given to the putative class members. <u>Id.</u> at 763. One of the important factors the district court must consider is the degree of publicity the lawsuit has received because the more widespread the publicity, the more likely absent class members are to rely on the suit to protect their rights. <u>Id.</u> In <u>Doe</u>, the Court ruled that the district court abused its discretion in not ordering notice of dismissal of the class action because of the substantial local media coverage given to the case. <u>Id.</u> at 763-64.

Here, there are at least initial indications of substantial media coverage of this lawsuit. While the parties have not favored the Court with evidence of media coverage, the Court's own brief research into the issue has uncovered four articles in <u>The Cincinnati Enquirer</u> reporting on or referencing this lawsuit and one article in <u>The Toledo Blade</u> reporting on this lawsuit.[2] It seems fair to assume that local television and

---

[2]    <u>See</u> <u>Sex offender law expands restrictions</u>, Cincinnati Enquirer, Apr. 30, 2005; <u>Sex offender ban challenged</u>, Cincinnati Enquirer, Sept. 7, 2005; <u>Sex offender trial ends</u>, Cincinnati Enquirer, Sept. 8, 2005; <u>Sex offender fights forced move</u>, Cincinnati Enquirer, Sept. 22, 2005; <u>8 offenders battle new Ohio</u>

radio coverage has been commensurate with the print coverage. Additionally, the Court is generally aware that there has been substantial print coverage devoted to lawsuits filed by various city and county legal officials pursuant to § 2950.031.  It is logical to conclude that registered sex offenders in Ohio have been following these events closely.

Under the circumstances, the Court finds that the putative class members may suffer prejudice absent notice of the dismissal of this lawsuit.  Accordingly, the parties are directed to submit to the Court a joint proposal for disseminating notice to potential class members no later than December 7, 2005.

**IT IS SO ORDERED**

Date November 7, 2005          s/Sandra S. Beckwith
                        Sandra S. Beckwith, Chief Judge
                          United States District Court

_____

residency rule, Toledo Blade, April 8, 2005.